Honorable Judge Alynne Ross
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn - NY 11201

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ AUG - 1 2006 ★
BROOKLYN OFFICE

Ordered that copies of this letter be transmitted to AUSA and defense counsel. --- Yac?h. Ajetunmobi  DJD  8/2/06

RE: Request for Sentencing Consideration Due to Harsh Confinement.

Being incarcerated since July 2005 under extreme harsh conditions at the Metropolitan Detention Center, I respectfully request a sentencing reconsideration from this Honorable Court in regards to the hardships of lengthy pre-trial, pre-sentence detainees confined in this institution.

In Bell v. Wolfish, 441 US 520, the Wolfish court ruled that pre-sentenced detainees constitutional rights were protected by the Due Process clause. However, the court buttressed its descision by noting that the average stay of detainees at M.D.C was only 60 days and analysis of the case shows the court focused on very narrow issues. Since 1979, M.D.C average stay increased to an estimated one year or even more.

In 1979, the population at M.D.C was just above 500 inmates. Presently the population growth increased to over 2000 inmates, even though the size of the housing unit remains the same.

(1)

At M.D.C., inmates are given less than 35 square feet of living space per person, half the amount required by the United Nations, American Correctional Association and American Public Health Association. Factors to be considered at M.D.C. are (1) over-crowding, (2) unsanitary conditions (3) inadequate bathroom facilities, (4) inadequate medical attention, (5) limited recreation, (6) restricted family and councel visits and (7) lack of ventilation in housing areas. See U.S. v. Francis, 129 F.Supp 2d 612 (SDNY 2001)

M.D.C. is grossly over crowded and contains non-sentenced, sentenced and alleged violent offenders, whom are housed together. The over crowded conditions are the cause of serious deprivations of detainees constitutional rights and have not kept up with the contemporary standards of decency (Estell v. Gamble, 429 US 97) and represents substantively harsher conditions from the conditions the defendant would experience if he had been designated at a federal prison camp or a minimum security prison.

In other words, the defendant has been punished more than a similarly prison situated offender who serves the same sentence at a minimum security prison.

The court found that a combination of double bunking and over crowded day rooms violated constitutional rights when imposed from an extensive period of time.

Each bunk bed is adjoined to another. Inmates are going through a daily cycle of inhaling what others exhaled. The bathroom consists of 6 shower heads, 6 toilets for a 120 inmates. During the duration of my detention, an inmate who is infected with H.I.V virus bleeds profusely from scars in his face, which leaves blood all over the utensils in the bathroom which other inmates are at risk with. Complaints have been made but the situation was not being addressed professionally.

There are absolutely no ventilation in the dorms, therefore one persons sickness like flu, sneezing, coughing, etc... would spread rapidly because there is no air coming through the air-tight sealed windows. Whenever someone is arrested and brought to M.D.C, such person would do a urine test and then sent to population with other inmates. Some inmates are lucky to get a T.B test a month after their arrest while some do not. Therefore, if a person infected with any form of illness or virus, they are sent directly to population after their arrest, without medical screening, once there is an empty bed available.

Upon inspection of M.D.C in 1986, Chief Judge Weinstein also determined that a lengthy incarceration in harsh conditions amounted to due process violations and therefore is (punishment)

Quoting Campbell v. Cauthron, 623 F.2D 503 (8th Circuit 1980) "Lengthy confinement cannot be ignored in deciding whether confinement meets constitutional requirements.

Judge Weinstein concluded that those subjected to the hardships of a lengthy pre-sentence detention under harsh conditions may therefore be meritorious of sentence reconsideration stating: We cannot measurably alter the conditions of pre-trial pre-sentence detention consistent with its limited purpose... But we can alter the length of incarceration.

In Lareau v. Manson, the court ruled that H.C.C. in 1981, a prison with the conditions comparable to M.D.C. today, violated due process rights of pre-trial/pre-sentence inmates by confining them in overcrowded conditions to a legitimate goal in a manner as to cause them to endure genuine privation and hardships over an extended period of time.

The legality of reconsideration is supported with various laws throughout the Second Circuit courts. While the issue of whether a sentencing judge may grant a sentencing reconsideration based upon a lengthy and harsh conditions of pre-sentence confinement is one which the Second Circuit has not ruled.

See US v. Londono-Jimenez 99 CR. 81-01 (RWS) 2000 WL 159 3381 *6 (SDNY October 5, 2000)

(It is an open question in this Circuit whether a departure could be granted on these grounds.

This seems to ignore the teaching of (Lara 905 F.2D 599 2nd Circuit 1990).

In this case the Court reconsidered the sentence from a guideline range of 121 to 151 months to 60 months based upon "Severity of the Defendant's Prison Term which was exacerbated by his confinement.

Nevertheless, a number of District Courts in S.D.N.Y have granted a sentence reconsideration on the grounds of harsh confinement.

US v. Brinton 139 F.3D 718, 725 Reconsideration of 30 months Downward Departure on condition of Pre-Sentence Confinement

And in US v. Hernandez Santiago 92 F.2D 97 101 (2nd Circuit 1996) the Court reconsidered the sentence by departing 3 levels based upon "Harsher Incarceration".

Due to lack of ventilation, the walls gets moist daily and forms mold and mildew which we inhale daily

The ceilings also develop moisture which turns into water droplets.

Inmates sleeping on the top bunks suffer, like myself, because water drops are falling on us while we are sleeping.

Regardless of how dry the ceiling, within an hour or two, the same is repeated. The droplets are formed as rust water, so not only are we being wet, but our bed linen inherited the rusty color from the water.

The laundry room contains one washer and a dryer for a 120 inmates. The mops used in cleaning the bathrooms, including the urinal area and the dorms are washed in the same washer as our cloths.

Inmates develop rashes on their skin regularly due to the fact that everything is washed in the same machine and we are not given disinfectants agents like bleach.

Under the terms of hardship pre-sentence confinement the following cases which supported these mentioned issues

1. US. v. Carty 264 F.3D 191 (2nd Cir. 2001)
2. Gitten v. Lefevre 891 F.2D 38, 40 (2nd Cir. 1991)
3. Covino v. Vermont Dept, 933 F.2D 128 (2nd Cir. 1991)

It is my intention to bring forth before this court, the harsh conditions at M.D.C and the hardships all inmates face during lengthy Pre-Trial/Pre-Sentence confinement and respectfully request a sentence reconsideration based on this issues.

Respectfully Submitted

*Ajetunmobi Paul*

Paul Ajetunmobi
Reg# 63674053